## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **JODI L. CANTOR,** | : | **Bankruptcy No. 06-24812 BM** |
| | : | |
| **Debtor** | : | **Chapter 7** |
| **CARLOTA M. BÖHM, TRUSTEE,** | : | |
| | : | |
| **Movant** | : | |
| | : | |
| **v.** | : | **Doc. # 57: Trustee's Objection To** |
| | : | **Debtor's Amended Exemptions** |
| **JODI L. CANTOR,** | : | |
| | : | **Related To Doc. # 28 and Doc. # 38** |
| **Respondent** | : | |
| **CARLOTA M. BÖHM , TRUSTEE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Adversary No. 07-2175 BM** |
| **v.** | : | |
| | : | **Complaint To Determine If Real** |
| **JODI L. CANTOR,** | : | **Property and/or Monthly Payment** |
| | : | **Is Property Of The Estate, And To** |
| **Defendant** | : | **Compel Turnover Of Said Property** |

Appearances:   Carlota M. Böhm, Esq. Chapter 7 Trustee
Matthew M. Herron, Esq., for Debtor/Defendant

## <u>MEMORANDUM OPINION</u>

### – I –

### INTRODUCTION

The chapter 7 trustee has brought an adversary action pursuant to § 542(a) of the

Bankruptcy Code against debtor Jodi Cantor and Lewis Cantor.  She seeks an order

directing them to turn over their respective interests in the residence in which debtor and

their children reside.  Debtor Jodi Cantor opposes turning over her interest in the property to the chapter 7 trustee.  Lewis Cantor did not answer the complaint and has not participated in the adversary action.

The chapter 7 trustee also has objected to the most recent exemption debtor has claimed in the residence.  Debtor insists that the claimed exemption is proper and should be allowed.

Judgment in the adversary action will be entered in favor of the chapter 7 trustee and against debtor and Lewis Cantor.  The chapter 7 trustee's objection to the exemption claimed by the debtor will be overruled.  The exemption will be allowed in the amount of $1.00.

## – II –

## FINDINGS OF FACT

Debtor and Lewis Cantor, who is not a debtor in bankruptcy, were married in 1996. One of them commenced a divorce proceeding against the other in state court in 2005. The record does not indicate which of them commenced the proceeding.

Prior to April of 2006, debtor owned shares of stock in a business known as Lighting by Erik North.  The value of the stock at that time is not indicated in the record.

Debtor and Lewis Cantor entered into a written property settlement agreement in their divorce proceeding in April of 2006.  Among things, the agreement provided for equitable distribution of their marital property.  It provided, for instance, that Lewis Cantor

would purchase in his name alone a residence that was worth $130,000 to $140,000. Debtor and their children were to reside in the residence for at least three years.

Lewis Cantor was permitted to grant a mortgage on the property to obtain financing for the purchase.  He was required to make monthly payments on the mortgage as they became due and to pay an additional $1,243 in principal each month.  The amount of the regular monthly payments due under the mortgage is not indicated in the record.

Debtor could exercise either of two options with respect to the property after she and their children had resided in it for a period of three years

First, debtor could direct Lewis Cantor to transfer title to the property to her free and clear of any liens or encumbrances except for the above mortgage, which Lewis Cantor was required to satisfy within three years thereafter.  Lewis Cantor also was responsible, while the mortgage remained unsatisfied, for paying real estate taxes as they became due and for purchasing property insurance.  Debtor was to be responsible for these obligations after the mortgage was satisfied.

Alternatively, debtor could direct Lewis Cantor to sell the property to a third party and remit the net sale proceeds to her.  Within two years after he sold the property, Lewis Cantor was to pay debtor the difference between the price he paid to purchase the property[1] and the net sale proceeds realized from selling the property.  Debtor was permitted under this option only to purchase another residence for herself and their

---

[1.]  Debtor and the chapter 7 trustee have stated in their respective briefs that Lewis Cantor purchased the property for $153,000.00 and that the balance due on the mortgage when debtor filed her bankruptcy petition was $140,853.14.

- 3 -

children.  Except for the mortgage already in place, Lewis Cantor was not permitted to encumber or lien the property prior to selling it.

As a *quid pro quo* for Lewis Cantor agreeing to purchase a house for debtor and their children to use as a residence for three years, debtor agreed to "waive" and transfer to Lewis Cantor her interest in shares of stock in a business known as Lighting by Erik North and in the building in which the business was located.  Lewis Cantor's interest in the business and the building was to be free and clear of any claim by debtor.

On June 23, 2006, approximately two months after the property settlement agreement was arrived at, the court having jurisdiction over the divorce proceeding issued a divorce decree.  The record in this case, which is scant, does not indicate whether the divorce decree incorporated the terms of the property settlement agreement.

On September 29, 2006, approximately five months after the property settlement agreement was reached and three months after the divorce decree issued, debtor filed a voluntary chapter 7 bankruptcy petition.  A chapter 7 trustee was appointed shortly thereafter.

Debtor resided in the real property with their children as of the date the petition was filed.  The record is silent concerning whether they presently continue to do so.

- 4 -

The bankruptcy schedules as initially filed listed assets with a total declared value of $9,154 and $94,718 in liabilities. Debtor initially did not list as an asset on Schedule A her interest in the above property purchased by Lewis Cantor. She instead listed it as an interest in *personal* property on Schedule B. The interest was cryptically described as follows:

> Equitable Distribution – Lighting by Erik 12% ownership – sold to husband as part of equitable distribution in return Husband bought debtor a house that is in his name and it is encumbered by a mortgage.

Debtor did not claim an exemption in the above property on Schedule C as initially filed. She did, however, claim exemptions in other assets listed on Schedule B in accordance with § 522(d)(2), (3), (4) and (5) of the Bankruptcy Code. These assets and claimed exemptions are not at issue here.

Debtor thereafter filed a confusing series of amended schedules which make it difficult to say with any confidence what debtor was trying to do with respect to her interest in the above real property.

For instance, debtor amended Schedule B on November 14, 2006. Among other things, the reference to equitable distribution found in Schedule B as initially filed was *deleted*. The net effect of this amendment of Schedule B was that any interest debtor had in the real property was not identified as an asset of her bankruptcy estate. Although one might expect the chapter 7 trustee to object to debtor's amended Schedule B for this reason, she did not do so.

- 5 -

On April 5, 2007, some five months after debtor had filed this amendment to Schedule B, she amended Schedule C.  Notwithstanding the absence of any indication on her schedules that she had an interest in the real property, debtor claimed an exemption therein in accordance with § 522(d)(1) of the Bankruptcy Code.[2]  While the declared value of the property was listed as "unknown", the amount of the exemption debtor claimed was $14,246.00.

The chapter 7 trustee objected in a timely manner to this exemption.  She asserted that the claimed exemption was improper and should be disallowed.  The amount of the claimed exemption, the chapter 7 trustee continued, should be limited to the amount allowed under some unspecified subsection of § 522(d).

On April 16, 2007, the chapter 7 trustee commenced the above adversary action against debtor and Lewis Cantor under § 542(a) of the Bankruptcy Code.  She asserted in the complaint that debtor's interest in the above property was worth at least $153,000.00 while debtor's interest in the shares of stock issued by Lighting by Erik North was worth at least $112,500.00.  In addition, the chapter 7 trustee asserted that debtor's interest in the real property became property of debtor's bankruptcy estate when debtor commenced her bankruptcy case.  She requested an order directing debtor and co-defendant Lewis Cantor to turn the property over so that it could be liquidated for the benefit of debtor's creditors.

---

[2] 11 U.S.C. § 522(d)(1) provided as follows when debtor filed her bankruptcy petition:
  (d) The following property may be exempted under subsection (b)(2)of this section:
    (1) The debtor's aggregate interest, not to exceed $18,450 in value, in real or personal property that the debtor uses ... as a residence.

- 6 -

Debtor and Lewis Cantor each was served with a summons and a copy of the complaint; only debtor, however, answered the complaint.  Lewis Cantor has not been heard from at all in connection with the adversary action.

On May 31, 2007, debtor reacted to the trustee's objection to the incomprehensible amended Schedule C debtor had filed on April 5, 2007, by once again amending schedules A, B and C.

Debtor listed her interest in the above real property as an estate asset on Schedule A for the first time.  She described the interest as follows:

> Debtor has a future interest in 1061 Coolidge Avenue in Bridgeville. She has no current ownership but does utilize the property as her primary interest (*sic*) . There appears to be no market for this interest but if there is some value the Debtor would like to use her full 522(d)(1) exemption.

The declared value of debtor's interest in the property was $1.00.

Debtor's interest in the above property, which was listed as an estate asset on Schedule B as initially filed and then disappeared from the amended Schedule B debtor filed on November 14, 2006, reappeared on Schedule B.  It was characterized as follows:

> Equitable Distribution – Lighting by Erik 12% ownership – sold to husband as part of equitable distribution in return Husband bought Debtor a house that is in his name, he pays for the house and it is encumbered by a mortgage. The Debtor's interest in that property is listed on Schedule A.

The declared value of debtor's interest in the property was $1.00.

To confuse matters further, debtor also amended Schedule C.  She exempted in accordance with § 522(d)(1) of the Bankruptcy Code her interest in the real property as described on Schedule A.  The amount of the claimed exemption was $1.00, the value of

the property as indicated on the above amendment to Schedule A.  Debtor did not stop

there.  She also claimed an exemption in accordance with § 522(d)(5)[3] in her interest in

the property as characterized on amended Schedule B.  The amount of the claimed

exemption was $1.00.

The chapter 7 trustee objected in a timely manner to the exemption debtor claimed

on amended Schedule C which debtor filed on May 31, 2007.  The chapter 7 trustee

objected that debtor's interest in the real property and in the equitable distribution did not

have a value of only $1.00 and asserted that the exemptions were improper and therefore

should be disallowed.

Debtor was not finished amending her schedules. On October 15, 2007, debtor

again amended schedules A and C , but not B.  As far as the court can tell, the sole point

of the amendments was to correct inconsequential typographical errors found in the

description of debtor's interest in the above property found in amended schedules A and

C debtor had filed on May 31, 2007.

Proceeding with an abundance of caution, the chapter 7 trustee objected to these

amendments in a timely manner on October 30, 2007.  The objection is identical in all

_____

[3.] 11 U.S.C. § 522(d)(5) provided as follows when debtor filed her bankruptcy petition:

(d) The following property may be exempted under subsection (b)(2) of this section:...
(5) The debtor's aggregate interest, not to exceed $1,075 plus up to $9,250 of any
unused amount of the exemption provided under paragraph (1) of this subsection.

- 8 -

respects to the objection of the chapter 7 trustee to amended schedules A and C debtor had filed on May 31, 2007.

A trial on the chapter 7 trustee's turnover action against debtor and Lewis Cantor and an evidentiary hearing on the chapter 7 trustee's objections to debtor's amended exemptions were scheduled for a date certain. Our hope that some light would be cast on the above bewildering sequence of schedules and claimed exemptions was quickly dashed on that date when debtor and the chapter 7 trustee concurred that there was no need for an evidentiary hearing. They assured the court that all disputed issues (whatever they might be) could be resolved as a matter of law. Their agreement in this regard goes a long way toward explaining why so little pertaining to the present matters is indicated in the record.

– III–

**TURNOVER ACTION**

The chapter 7 trustee seeks In accordance with § 542(a) of the Bankruptcy Code to compel debtor and Lewis Cantor to turn over their respective interests in the real property in which debtor and their children reside and of which Lewis presently is the owner of record.

We note preliminarily before addressing the chapter 7 trustee's § 542(a) cause of action against debtor that debtor has an *obligation* under §§ 521(a)(3) and (4)[4] of the

---

[4.] Section  521 of the Bankruptcy Code provides in part as follows:

(a) The debtor shall -- ....
(3) If a trustee is serving in the case ... cooperate with the trustee as is necessary to enable the trustee to perform the trustee's duties under this title....

Bankruptcy Code to cooperate with and to surrender to the chapter 7 trustee all property of the bankruptcy estate.  These obligations are "self-executing". *In re Schick*, 213 B.R. 4, 8 (Bankr. S.D.N.Y. 1997).

The question arises whether these provisions obviate the necessity of considering the chapter 7 trustee's § 542(a) cause of action to the extent that the chapter 7 trustee seeks an order directing debtor to turn over her interest in the above real property.  While debtor already has such an obligation, we will discuss the chapter 7 trustee's § 542(a) cause of action against debtor because the chapter 7 trustee has brought such an action against debtor and the parties have approached it as a § 542(a) matter.

Subsection 542(a) provides in part as follows:

> (a) ... [A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may ... sell ... under section 363 of this title ... shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

To prevail under this provision the chapter 7 trustee must demonstrate that: (1) an entity other than a custodian has possession, custody or control of property during the case; and (2) the trustee may sell the property under § 363 of the Bankruptcy Code.

---

[4.] Continued......

(4) If a trustee is serving in the case ... surrender to the trustee all property of the estate....
11 U.S.C.521(a).

Debtor and Lewis Cantor both qualify as entities for purposes of § 542(a).  The term "entity" includes persons. See 11 U.S.C. § 101(13).  The term "person" in turn includes individuals. See 11 U.S.C. § 101(41).  Debtor and Lewis Cantor are individuals.

The first of these requirements is satisfied with respect to debtor.  Since some time in 2006 debtor resided continuously with their children in the property Lewis Cantor purchased and thus was in possession of it as of the petition date.  Her interest in the property, however, is more than merely possessory.  Debtor has the option after three years of having Lewis Cantor transfer title to the property to her or having him sell the property to a third party and remitting to her the amount for which he purchased the property in 2006.

What about the second requirement?  May the chapter 7 trustee sell the property in accordance with § 363 of the Bankruptcy Code?  If this requirement is satisfied and the exception set forth in the final clause of § 542(a) does not apply, the chapter 7 trustee will prevail with respect to debtor.

Subsection 363(b)(1) of the Bankruptcy Code provides in part as follows:

(b)(1) The trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, *property of the estate* ….

11 U.S.C. § 363(b)(1).

What qualifies as "property of the estate" for purposes of § 361(b)(1) is set forth at § 541 of the Bankruptcy Code, which provides in relevant as follows:

(a) The commencement of a case under … this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

- 11 -

> (1) ... [A]ll legal or equitable interests of the debtor in property
> as of the commencement of the case ....

11 U.S.C. § 541(a).

The term "property" occurring in § 541(a)(1) is expansive in its scope and not susceptible of categorical definition.  An interest in property does not lie beyond the scope of the term simply because it is novel or contingent or its enjoyment is postponed until some time in the future.  *Pension Transfer Corp. v. Beneficiaries Under the Third Amendment to Freuhauf Trailer Corporation Retirement Plan No. 003 (In re Freuhauf Trailer Corp.)*, 444 F.3d 203, 211 (3d Cir. 2006).

Federal law determines what types of property comprise the bankruptcy estate while state law creates and determines what interest, if any, a debtor has in property. *O'Dowd v. Trueger (In re O'Dowd)*, 233 F.3d 197, 200 (3d Cir. 2000).

We need not determine whether debtor's interest in the property qualifies as property of her bankruptcy estate and, if it does, what type of interest she had in it as of the commencement of her bankruptcy case.  Debtor *conceded* in her brief that her interest qualifies as property of her bankruptcy estate. Debtor further conceded that she has a *future* interest in the property which is *contingent* upon Lewis Cantor satisfying the mortgage and conveying title to the property to her.

These concessions notwithstanding, debtor denies that she is required by § 542 (a) to turn the property over to the chapter 7 trustee.  It would be an understatement to say that debtor's arguments in support of this proposition are vague and defy easy

- 12 -

formulation.  As far as we are able to discern, debtor has raised two arguments in support of her position.

Unless a restriction imposed by state law on property of the bankruptcy estate is specifically pre-empted by the Bankruptcy Code, a bankruptcy trustee's rights in such property are co-extensive with the rights a debtor had in the property under state law prior to the commencement of the bankruptcy case. *In re Integrated Solutions, Inc. v. Service Support Specialties, Inc. (In re Integrated Solutions, Inc.)*, 124 F.3d 487, 493 (3d Cir. 1997).  A bankruptcy trustee's rights with respect to property, in other words, are no greater than debtor's the rights debtor had with respect to property prior to bankruptcy.

Relying on this principle, debtor first asserts that the second of the above requirements of § 542(a) is not satisfied because the chapter 7 trustee may not sell the property in light of a specific provision contained in the property settlement agreement.

The property settlement agreement restricted what debtor could do with the proceeds Lewis Cantor was to remit to her if she chose to have him sell the above property.  Debtor was permitted to use the sale proceeds solely to purchase another residence for herself and their children.  From this debtor would have us infer that the chapter 7 trustee therefore may not sell the property and distribute the sale proceeds to debtor's creditors.

Debtor's reasoning is flawed in a variety of ways.

The argument assumes, without providing any elaboration, that this restriction imposed by the property settlement agreement qualifies for purposes of § 542a) as a

- 13 -

restriction *imposed by state law* upon debtor's interest in the property. It is not self-evident, as debtor obviously thinks it is, that a restriction imposed by virtue of a property settlement agreement qualifies as a restriction *imposed by state law* on property that becomes part of the bankruptcy estate.

A property settlement agreement entered into in the course of a divorce proceeding is construed and enforced in Pennsylvania in accordance with the principles of contract law. *Cioffi v. Cioffi*, 885 A.2d 45, 48 (Pa. Super. 2005), *appeal denied*, 588 Pa. 768, 905 A.2d 499 (2006). Debtor has not shown that a restriction on a party's rights with respect to property imposed by the terms of a contract such as a property settlement agreement reached in a divorce proceeding qualifies as a restriction imposed by state law.

There is an additional problem with debtor's assertion that the chapter 7 trustee may not sell her interest in the property. Even if debtor were correct in asserting that state law imposes a restriction on *debtor* regarding what she may do with the money realized from a sale of the property, it does *not* follow that *the chapter 7 trustee* may not sell the property in accordance with § 363(b)(1) of the Bankruptcy Code. Such a conclusion is a *non sequitur*.

The property settlement agreement specifically addressed what debtor was permitted to do if she elected to have Lewis Cantor sell the property and turn the sale proceeds over to her. It was silent, however, concerning whether *debtor herself* was permitted to sell her interest in the residence. We take such silence as indicating that the

- 14 -

property settlement agreement imposed no restriction on the right of the debtor herself to sell her interest in the property.

We indicated previously that a chapter 7 trustee generally has no greater rights in property than a debtor had under state law prior to bankruptcy. By the same token, the chapter 7 trustee's rights in property of debtor's bankruptcy estate are not less than the rights debtor had in the property prior to bankruptcy. If the property settlement agreement imposed no such restriction on debtor's right to sell her interest in the property, it also imposes no such restriction on the chapter 7 trustee's right to sell debtor's interest in the property.

We conclude in light of the foregoing considerations that the second of the above-noted requirements of § 542(a) also is satisfied in this case with respect to debtor. Her assertion that it is not satisfied lacks merit.

In her second argument in opposition to the chapter 7 trustee's turnover action, debtor asserts the affirmative defense that the exception set forth in the final clause of § 542(a) applies to this case. The property, she maintains, is of "inconsequential value or benefit to the [bankruptcy] estate"; it is of value or benefit only to debtor and their children as a place to live.

A party bringing a cause of action obviously has the burden of production at trial as well as the burden of persuasion with respect to each element of an asserted cause of action. If that party satisfies its burden, the burdens of production and of persuasion shift

to the party asserting an affirmative defense to prove its defense. *Moore v. Kulicke & Soffa Industries, Inc.*, 318 F.3d 562, 566 (3d Cir 2003).

According to debtor, there is "little or no equity" in the property.   Lewis Cantor purchased the property for $153,000.00 at some unknown time in 2006.  The amount due on the mortgage as of the petition date was $140,853.14.   The chapter 7 trustee apparently agrees that these numbers are accurate.   If these numbers are correct, it follows by simple arithmetic that the equity in the property as of the petition date was "only" $12,146.86 ($153,000.00  —  $140,853.14 = $12,146.86).  We do not take issue with debtor's argument *to this point*.  We will assume for the sake of argument that these amounts are accurate and that consequently there was $12,146.86 worth of equity in the property *as of the petition date*.

Without expressly so stating, debtor apparently assumes that the costs of selling the property and the trustee's fee for selling it must be taken into account when determining whether the property is of "inconsequential value to the estate".   We take no issue with this premise.

If these amounts are deducted from the sale proceeds, debtor maintains little (if anything) of the above equity in the property will remain for distribution to debtor's creditors.  From this debtor would have us conclude that the property in question is of "inconsequential value or benefit to the estate" for purposes of § 542 (a) and may not be sold by the chapter 7 trustee; it has significant value only for debtor and their children as a place to live.  This conclusion does not follow in this case.

- 16 -

Debtor's argument in favor of the proposition that the property is of "inconsequential value" to the bankruptcy estate and that the chapter 7 trustee therefore may not sell it relies on still another premise: the appropriate point in time to consider when determining whether the property is of inconsequential value to her bankruptcy estate for purposes of § 542(a) is *the date on which the bankruptcy petition was filed*. We take exception to this additional premise.

Subsection 542(a) is silent concerning the moment in time one should consider when determining whether property is of inconsequential value or benefit to the bankruptcy estate. We are aware of no provision in the Bankruptcy Code that controls in this regard. The legislative history also is silent in this regard. Moreover, debtor has cited to no judicial authority in support of the premise and our own research has not found any such authority.

The proposition that the pertinent moment in time to look to in making this determination is when the petition was filed would unduly restrict the scope of the final clause of § 542(a). In our estimation, the pertinent moment in time to consider in making such a determination is *when the turnover action is tried*. The value of estate property as of the petition date unquestionably can and often does increase (or decrease), sometimes substantially, by the time a § 542(a) matter is tried. The assumption that the petition date is the pertinent moment in time to look to when determining whether estate property is of inconsequential value or benefit to the bankruptcy estate for purposes of § 542(a) unduly limits the prospect of maximizing recovery for the benefit of creditors.

- 17 -

Debtor, who has the burden of proof on this matter, did not produce any evidence concerning the value of the property and the amount of the outstanding mortgage lien *as of the scheduled trial date*. The amount due under the mortgage at the time of trial may have been less, perhaps considerably, than the amount that was due under the mortgage as of the petition date. The possibility that this is the case cannot be ruled out in this instance.

Lewis Cantor was required under the terms of the property settlement agreement to continue making regular monthly mortgage payments as they became due during the three-year period before debtor was to decide whether Lewis Cantor should convey title to the property to her or should sell the property and remit to debtor the amount for which he had purchased the property in 2006. The record does not indicate the amount of these "regular" mortgage payments or that he made these payments. We do, however, know that Lewis Cantor also was required to pay the mortgagee $1,243 per month in addition to the "regular" monthly mortgage payment.

Setting aside for the moment the question whether Lewis Cantor made the "regular" monthly mortgage, whatever the amount due every month, assume for the sake of analysis that he continued up to the time of trial to make the additional $1,243.00 monthly payment under the property settlement agreement. Debtor has not produced anything indicating that he did not make these additional payments and we therefore will assume that he did.

If Lewis Cantor made just these latter payments during the fifteen-month interval between the petition date and the date on which trial of this adversary action was to occur, the principal unpaid balance due under the mortgage was *reduced* by $18,645.00 (15 x $1,243.00 = $18,645.00) from $140,853.14 to $122,208.14 ($140,853.14 –- $18,645.00 = $122,208,14).   Assuming, as we have, that the value of the property remained $153,000.00 as of the trial date, the purported equity in the property increased from $12,843.86 as of the petition date to $31,488.86 as of the date on which trail of the adversary was to occur ($12,843.86 + $18,645.00 = $31,488.86).  If the value of the property in fact was greater than $153,000.00 by the trial date, the amount of equity under this scenario would be correspondingly greater than $31,488.86.

Debtor's assertion that the property was of inconsequential value or benefit to her bankruptcy estate must be rejected if Lewis Cantor in fact made these additional monthly payments.  A significant amount would remain for distribution to debtor's creditors after the cost of selling the property and the chapter 7 trustee's fee for selling the property are deducted from the net sale proceeds.

We conclude in light of the foregoing that the chapter 7 trustee must prevail under § 542(a) and that debtor therefore must turn over her interest in the above property to the chapter 7 trustee.

Our discussion of § 542(a) thus far has focused solely on debtor.  What about Lewis Cantor?  Must he also turn over his interest in the property to the chapter 7 trustee?

- 19 -

Lewis Cantor also will be directed to turn over his interest in the property to the chapter 7 trustee. The chapter 7 trustee, it was noted previously, served Lewis Cantor with a summons and a copy of the complaint in this adversary action. The chapter 7 trustee has filed a certificate of service stating that Lewis Cantor was served by first class mail at his address of record on the day after the complaint was filed. We have no reason to doubt that proper service was made on him. We accordingly infer from Lewis Cantor's failure to answer to the complaint or to otherwise participate in this adversary action that he has no objection to an order directing him to turn over his interest in the above property to the chapter 7 trustee. A judgment against Lewis Cantor to that effect will issue.

## – IV –

### OBJECTION TO CLAIMED EXEMPTION

The dizzying series of amendments debtor made to her bankruptcy schedules was recounted previously in excruciating detail. What remains to be decided is the chapter 7 trustee's objection to the most recent amended schedules wherein debtor claimed an exemption in the property Lewis Cantor purchased and in which debtor and their children reside.

As has been pointed out, debtor amended schedules A, B and C on May 31, 2007.

She listed as an estate asset for the first time on amended Schedule A the real property Lewis Cantor had purchased pursuant to the terms of the property settlement agreement. Debtor declared on Schedule A that the property was worth only $1.00 and

stated that she intended to claim an exemption up to the maximum amount allowed under § 522(d)(1) if the property turned out to be worth more than $1.00.

Debtor listed on Schedule B her interest in shares of stock issued by Lighting by Erik North that she had transferred to Lewis Cantor prior to the petition date in return for his purchase of the above property. As was the case with her interest in the house, debtor declared that her interest in the stock was worth $1.00.

On Schedule C, debtor claimed an exemption in the residence in accordance with § 522 (d)(1) of the Bankruptcy Code and an exemption in the stock in accordance with § 522(d) (5). The amount of the exemption claimed in each instance was $1.00.

In her objection to these amendments, the chapter 7 trustee cryptically asserted that the exemptions were improper and that the value of the assets exceeded $1.00.

Debtor was not finished amending her schedules. Debtor amended schedules A and C yet again on October 15, 2007. The apparent reason for the amendments was to correct certain non-substantive typographical errors in amended schedules A and C that she had filed on May 31, 2007. The former schedules were substantively identical to the latter. Proceeding with an abundance of caution, the chapter 7 trustee raised timely objections to the latter exemptions which were identical to her objections to exemptions claimed on May 31, 2007.

The chapter 7 trustee raised two objections to the amended exemptions debtor filed on October 15, 2007. She first asserted that the claimed exemptions were "improper" and therefore should be disallowed in their entirety. The chapter 7 trustee alternatively

- 21 -

asserted that to the extent the claimed exemptions were allowable, they should be allowed only in the amount of $1.00, the amount of the exemptions claimed by debtor.

While it is not difficult to state the chapter 7 trustee's objections, reconstructing the reasoning behind the objections is no small task.   The underlying rationale for the objections by and large is not articulated.   We will attempt to "fill in the blanks" in this respect before addressing the merits of the objections.

Debtor transferred her interest in shares of Lighting by Erik North as a *quid pro quo* whereby Lewis Cantor agreed to purchase a residence for debtor and their children.

The purpose of this transaction apparently was to dispose of debtor's shares of stock and to place the house debtor was to receive in return beyond the reach of her creditors for at least three years because Lewis Cantor would be the owner of record of the property during that period.[5]   The chapter 7 trustee stated in her brief that such an outcome was "totally contrary to the intent of the Bankruptcy Code to give the debtor a fresh start but pay creditors what they have the right to receive". From this the chapter 7 trustee would have us conclude that the exemption debtor has claimed in the house should be *completely* disallowed.   We are not willing to so conclude in this instance.

The chapter 7 trustee as the objector to the $1.00 exemptions debtor has claimed has the burden of proving that the exemptions claimed are not proper. *Interim Federal*

---

[5.]  The transfer of debtor's interest in the stock may have constituted an avoidable fraudulent transfer under Pennsylvania law or under § 548(a)(1) of the Bankruptcy Code. However, no action to avoid the transfer was brought under state law prior to the commencement of this bankruptcy case.  The bar date for bringing such an action under § 548(a) passed some time ago.

*Rule of Bankruptcy Procedure 4003(c)*.  This she must do by a preponderance of the evidence. *Jenkins v. Hodes (In re Hodes)*, 402 F.3d 1005, 1010 (10th Cir. 2005).

Her assurances to the contrary notwithstanding, the chapter 7 trustee's argument relies on the proposition that debtor's voluntary transfer of the stock, which might not have been exemptible, in return for the house, which might be exemptible, was "improper". According to the chapter 7 trustee, debtor's attempt to place her interest in the house beyond the reach of her creditors by transferring the stock to Lewis Cantor and then claiming an exemption in the entire amount of the declared value of the house "should not be allowed".  Entirely disallowing the exemption in the house would, in the chapter 7 trustee's estimation, rectify this alleged impropriety. We reject the contention that the exemption debtor has taken in the residence is improper for this reason and therefore must be entirely disallowed.

It is not *per se* improper to convert a non-exempt asset to an exempt asset on the eve of bankruptcy for the purpose of placing the latter beyond the reach of one's creditors by exempting it.  Such a course of conduct will *not* necessarily deprive a debtor of a claimed exemption to which she otherwise would be entitled. See, for instance, *Norwest Bank Nebraska v. Tveten*, 848 F.2d 871, 873-74 (8th Cir. 1988).

This "well-established" principle, however, is not absolute.  An exception is made when a debtor acts with actual intent to defraud her creditors.  A claimed exemption in such instances may be disallowed. *Id.*, 848 F.2d at 874.

- 23 -

An argument might be made that the above-described *quid pro quo* and debtor's subsequent § 522(d)(1) exemption of the entire *declared* value of the house was done with actual intent on debtor's part to defraud her creditors.   The truth of such a finding, however, is not self-evident.   Extrinsic evidence of intent to defraud creditors is required. The  chapter 7 trustee has produced no such evidence.

The chapter 7 trustee and counsel to debtor assured the court at the scheduled hearing on the chapter 7 trustee's objection to the claimed exemption that an evidentiary hearing was not necessary.  They were of the opinion that the objection to the exemption could be decided as a question of law.  Because the chapter 7 trustee has failed to meet her burden of proof *vis-à-vis* the objection to debtor's amended exemption, we must overrule it.   The assertion that debtor's amended § 522(d)(1) exemption should be disallowed in its entirety is without merit In this instance.

This last determination does not conclude our consideration of the chapter 7 trustee's objection to the $1.00 amended exemption debtor claimed under § 522(d)(1) in the residence.

As was noted earlier, the chapter 7 trustee *alternatively* asserted that *to the extent debtor's amended exemption is allowable*, it should be allowed only in the amount of $1.00.   When taken at face value, this last assertion would appear to be unassailable because debtor has claimed an exemption under § 522(d)(1) in the amount of only $1.00. Debtor's claimed exemption consequently will be allowed in this amount.

- 24 -

If we correctly understand the substance of this alternative objection by the chapter 7 trustee to debtor's most recent amended exemption, however, this does not fully dispose of it.  There is more to the objection than first meets the eye.

Debtor stated in the most recent amendments to schedules A and C, which she filed on October 15, 2007, that there was "no market" for her interest in the real property. Instead of declaring that its value was "unknown", debtor declared that it was worth $1.00. Debtor further stated that if her interest happened to be worth more than $1.00, she intended to increase the amount of the claimed exemption to an amount within the upper limit of § 522(d)(1).  By so doing, debtor put all interested parties on notice that she intended to increase the amount of the claimed exemption if circumstances changed.

The chapter 7 trustee has not merely asserted that if debtor's exemption in the property is allowed, it should be allowed only in the amount of $1.00.  She maintains that debtor is "stuck" with her $1.00 exemption and may not increase its amount at a later time.  The $1.00 exemption is "cast in stone".  We reject this assertion in this instance.

Debtor's bankruptcy case has not yet been closed.  The general rule concerning amending bankruptcy schedules is that a debtor may do so as a matter of course at any time before the case is closed. See *Interim Federal Rule of Bankruptcy Procedure 1009(c)*. Court's have construed this rule liberally. See *Armstrong v. Harris (In re Harris)*, 886 F.2d 1011, 1015 (8th Cir. 1989).

A debtor's right to amend her schedules, however, is not without qualification. The right to amend may be "tempered" because of certain conduct by the debtor or because

- 25 -

the consequences for creditors if amendment were permitted. *Kaelin v. Basset (In re Basset)*, 308 F.3d 885, 889 (8th Cir. 2002).

There are two recognized exceptions to Interim Federal Rule of Bankruptcy Procedure 1009(c). Amendments may be disallowed prior to the closing of a case when: (1) the debtor has acted in bad faith in amending a schedule; or (2) prejudice to creditors would result if amendment were allowed. *Osborn v. Durant Bank & Trust Company (In re Osborn)*, 24 F.3d 1199, 1206 (10th Cir. 1994).

Bad faith in this context requires deception of some sort by the debtor. *Unruh v. Tow (In re Unruh)*, 2008WL341465, * 2 (5th Cir. 2008). It may be found, for instance, when a debtor seeks to deceive creditors by deliberately understating the value of an estate asset. *Hannigan v. White (In re Hannigan)*, 409 F.3d 480, 484 (1st Cir. 2005).

Prejudice occurs in this context when a party in interest relied to its detriment on a prior claimed exemption. *Hardage v. Herring National Bank*, 837 F.2d 1319, 1322 (5th Cir. 1988). Thus, the simple fact that an amended exemption, if permitted, would adversely affect the amount ultimately distributed to a creditor will not suffice. Moreover, without something more, a finding of prejudice to a creditor if a debtor is permitted to amend a schedule is not a sufficient basis for purposes of Interim Federal Rule of Bankruptcy Procedure 1009(c) for disallowing an amendment to a schedule. Disallowance requires a showing that prejudice to creditors if the amendment is permitted would outweigh prejudice to debtor if the amendment is not permitted. *In re Osborn*, 24 F.3d at 1206.

- 26 -

A plausible case might be made that the above-described confusing series of amendments debtor made to her schedules indicates that debtor acted in bad faith. The chapter 7 trustee, however, produced no evidence which might establish that the most recent amendments to debtor's schedules were motivated by bad faith or that the prejudice creditors will suffer if the amendment is allowed outweighs the prejudice debtor will suffer if the amendment is not allowed. The chapter 7 trustee, in other words, has not met her burden of proof.

It therefore follows that the chapter 7 trustee's alternative objection to the amended exemption debtor has claimed in amended Schedule C she filed on October 15, 2007, also must be overruled.

One final observation is necessary before concluding our analysis of the chapter 7 trustee's objection to the most recent amended exemption debtor has claimed in the above real property.

This bankruptcy case, which commenced over twenty months ago in September of 2006, is virtually "dead in the water" and is going nowhere. It has languished far too long.

If the chapter 7 trustee intends to sell debtor's interest in the house, she should undertake to do so promptly and not wait until 2009, when Lewis Cantor must transfer title to debtor if debtor so elects.

In addition, if debtor expects to amend her claimed exemption of her interest in the house, she must do so within thirty days and state the exact dollar the amount of the claimed exemption. Debtor's continuing indecision concerning the precise amount of the

claimed will not be permitted.  Further amendment of the claimed exemption beyond this final claimed exemption will only further delay administration of a case that has gone on for too long.  If any objection is raised to this final amended exemption, we will deal with it promptly.

It is time for debtor and the chapter 7 trustee to take steps to place this case in a posture in which it finally can be closed.  Further stalling and delaying on the part of either of them will not be in the best interest of debtor and her creditors.

An appropriate order disposing of the present matters will issue.

**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

Dated: _6-25-08_

**FILED**

JUN 25 2008

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

- 28 -

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

IN RE:

| | |
|---|---|
| **JODI L. CANTOR,** : | **Bankruptcy No. 06-24812 BM** |
| : | |
| **Debtor** : | **Chapter 7** |
| **CARLOTA M. BÖHM, TRUSTEE,** : | |
| : | |
| **Movant** : | |
| : | |
| **v.** : | **Doc. # 57: Trustee's Objection To** |
| : | **Debtor's Amended Exemptions** |
| **JODI L. CANTOR,** : | |
| : | **Related To Doc. # 28 and Doc. # 38** |
| **Respondent** : | |
| **CARLOTA M. BÖHM , TRUSTEE,** : | |
| : | |
| **Plaintiff,** : | |
| : | **Adversary No. 07-2175 BM** |
| **v.** : | |
| : | **Complaint To Determine If Real** |
| **JODI L. CANTOR,** : | **Property and/or Monthly Payment** |
| : | **Is Property Of The Estate, And To** |
| **Defendant** : | **Compel Turnover Of Said Property** |

**ORDER OF COURT**

**AND NOW,** this **25th** day of **June**, 2008, for reasons set forth in the preceding

memorandum opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** that**:**

(1) **JUDGMENT** be and hereby is entered in Adversary Action No. 07-2175 **IN FAVOR OF** the chapter 7 trustee and **AGAINST** debtor Jodi L. Cantor and co-defendant Lewis Cantor. Debtor and Lewis Cantor **SHALL** forthwith turn over to the chapter 7 trustee their respective interests in the real property in which debtor presently resides;

(2)The chapter 7 trustee's objection to the $1.00 exemption debtor has claimed in the real property be and hereby is **OVERRULED**; and

(3) If debtor intends to amend her exemption in the residence yet again, she **SHALL** do so within thirty days of the date of this order.  Any amended exemption filed after that date **SHALL** be **DISALLOWED.**

It is **SO ORDERED**.

6-25-08

**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

FILED

JUN 25 2008

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

- 2 -